IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHARLES B. A., an individual<br><br>        Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>        Defendant, | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:19-CV-410 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff Charles B. A.'s appeal from the decision of the Social Security Administration denying his application for disability insurance benefits. For the reasons discussed below, the Court will affirm the Commissioner's decision.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

affirmed.[4] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II. BACKGROUND

A.     PROCEDURAL HISTORY

On February 14, 2017, Plaintiff applied for disability insurance benefits, alleging disability beginning on October 13, 2014.[7] The claim was denied initially and upon reconsideration.[8] Plaintiff then requested a hearing before an ALJ, which was held on March 27, 2018.[9] The ALJ issued a decision on June 8, 2018, finding that Plaintiff was not disabled.[10] The Appeals Council denied Plaintiff's request for review on May 19, 2019,[11] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[12]

B.     MEDICAL HISTORY

Plaintiff was born premature and suffers from certain birth defects, including cerebral palsy and visual field loss.[13] Plaintiff's cerebral palsy causes the right side of his body to be weaker than the left, and he has a gait abnormality that causes him to lean left.[14] Plaintiff is also

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] Docket No. 19, at 1.

[8] R. at 82, 128.

[9] *Id.* at 35.

[10] *Id.* at 15–26.

[11] *Id.* at 1–6.

[12] 20 C.F.R. § 422.210(a).

[13] R. at 21.

[14] *Id.*

2

legally blind and lacks good peripheral vision, binocular vision, or depth perception.[15] With respect to his mental impairments, Plaintiff suffers from sleep disturbances, impaired concentration, panic attacks, anxiety attacks, and depression.[16] His physical symptoms will likely remain with him for life, but the ALJ found that his mental impairments have improved at times through therapy and medication.[17] Plaintiff's mental impairments are related to his physical issues.

C.    HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that his cerebral palsy, vision problems, anxiety, and depression made him unable to work.[18] Plaintiff also testified that he suffered anxiety and panic attacks at work when interacting with other people.[19] Plaintiff stated that medication helped reduce the frequency of panic attacks, but that he suffers anxiety attacks "every few days."[20] He also testified that his depression and anxiety are his biggest impediments preventing him from working full time.[21]

D.    THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity on or after October 13, 2014.[22] At step two, the ALJ found that Plaintiff suffered from

---

[15] *Id.*
[16] *Id.* 21–22.
[17] *Id*. at 23.
[18] *Id.* at 39, 44–45.
[19] *Id.* at 45–46.
[20] *Id.* at 46.
[21] *Id.* at 57.
[22] *Id.* at 17.

3

the following severe impairments: cerebral palsy, visual field loss, anxiety, depression, adjustment disorder with mixed anxiety and depressed mood, and persistent depressive disorder with anxiety, in partial remission with medication.[23] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[24] At step four, the ALJ determined that Plaintiff could not perform his past relevant work.[25] At step five, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, he was not disabled.[26]

## III. DISCUSSION

Plaintiff challenges the ALJ's determination on a variety of grounds. Plaintiff argues that the ALJ erred by: (1) misconstruing plaintiff's testimony;[27] (2) failing to properly weigh Dr. Ingebretsen's exam;[28] (3) improperly assessing Mr. Allred's opinion;[29] (4) improperly assessing the testimony of Plaintiff's brother;[30] (5) erroneously determining Plaintiff's residual functional capacity ("RFC");[31] and (6) not incorporating certain moderate limitations into his RFC finding.[32]

A. Allegedly Misconstrued Plaintiff's Testimony

In recounting Plaintiff's testimony, the ALJ noted,

---

[23] *Id.* at 18.
[24] *Id.*
[25] *Id.* at 24–25.
[26] *Id.* at 25.
[27] *See* Docket No. 19, at 6–9.
[28] *Id.* at 9–10.
[29] *Id.* at 10.
[30] *Id.* at 12.
[31] *Id.* at 13–16.
[32] *Id.* at 16–17.

4

[m]entally, he described panic attacks and anxiety issues. He reported that if he did not have medications, he got numb, his heart raced, and he felt like he needed to leave the situation. His panic could be triggered by increased stress or social situations. He noted that he would fumble with things in a checkout line and did not engage with customers. Furthermore, he estimated that he needed at least 15-30 minutes to get away from the situation and recover. However, his panic attacks are infrequent, with only about five of them in a two-year period.[33]

Plaintiff argues that this assessment was in error because it conflates Plaintiff's testimony regarding panic attacks with testimony about his anxiety attacks. According to Plaintiff, "his panic attacks last 30 minutes to an hour and require him to be in a darkened room; but as the ALJ indicated, he had only had five panic attacks in the past two years."[34] Conversely, his anxiety attacks last 15-30 minutes, occur every "few days at work (1-2 times a week)," and "2-3 times a week" at home.[35]

Plaintiff is correct that this assessment appears to be limited to discussing Plaintiff's panic attacks. Elsewhere in the ALJ's decision, however, he specifically discusses Plaintiff's anxiety attacks and provides specific reasons for the ALJ's conclusion that Plaintiff's reported symptoms are inconsistent with the objective medical evidence.[36] There is no error here because the ALJ acknowledged Plaintiff's anxiety and panic attacks, considered the substantive evidence, and resolved the conflict between Plaintiff's testimony and the medical evidence.[37]

---

[33] R. at 20.

[34] *See* Docket No. 19, at 6.

[35] *Id.* at 7.

[36] *See, e.g.*, R. at 21–22 ("The claimant experienced a significant anxiety attack in October 2014, at stopped working at that time. He was prescribed Lexapro and subsequently reported improved symptoms, with only occasional racing thoughts and infrequent panic attacks. Counselling records noted improved anxiety symptoms with treatment.") (citations omitted).

[37] *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (concluding that the ALJ is entitled to acknowledge evidentiary conflicts and resolve any conflicts in the record).

B. Allegedly Discounted Dr. Ingebretsen's Testimony

An ALJ must review every medical opinion.[38] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[39] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[40] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in the record.[41] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[42]

Dr. Ingebretsen physically examined Plaintiff and prepared a report detailing his observations. The ALJ reviewed Dr. Ingebretsen's report, but declined to assign any weight to it because it contained "only detailed objective observations, without any opinions regarding the claimant's function-by-function capabilities other than stating that he must walk slowly due to balance issues."[43] Plaintiff argues that this constitutes a legal error because the ALJ is required to discuss and weigh Dr. Ingebretsen's report. The Court disagrees.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's]

---

[38] 20 C.F.R. § 404.1527(c).

[39] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *See* R. at 23–24.

physical or mental restrictions."⁴⁴ "A physician's observations do not constitute 'medical opinions' for which the ALJ has a duty to discuss and weigh."⁴⁵

Plaintiff argues that Dr. Ingebretsen's report is a medical opinion because he opined that Plaintiff is legally blind, has severe, right-sided weakness and spasticity severely affecting his coordination, balance, ambulation, gait, and processing speed, and that Plaintiff cannot engage in fine dexterity and those activities that require vision, including driving.⁴⁶ Dr. Ingebretsen's statements are most fairly characterized as observations rather than a medical opinion because they do not state the severity or limitations resulting from the symptoms. The ALJ did not error in assigning Dr. Ingebretsen's report no weight.

C. Allegedly Discounted Mr. Allred's Opinion

Mr. Allred is a licensed therapist, who all the parties agree is not an accepted medical source.⁴⁷ As such, he is not entitled to the same deference that an accepted medical source is provided.⁴⁸ In assessing a non-accepted medical source, an ALJ is generally required to "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."⁴⁹

---

⁴⁴ 20 C.F.R. §§ 404.1527(a), 416.927(a).

⁴⁵ *Copelin v. Saul*, CIV-18-1157-STE, 2019 WL 3082472, at *4 (W.D. Okla. July 15, 2019) (unpublished); *accord McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012) (unpublished).

⁴⁶ *See* Docket No. 26, at 8.

⁴⁷ *See* Docket No. 19, at 10; Docket No. 23, at 15.

⁴⁸ *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012).

⁴⁹ *Id.* (quoting SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)).

The ALJ gave little weight to Mr. Allred's opinion because "the limitations [Mr. Allred] gave are not consistent with [Plaintiff's] treatment records, which show minimal symptoms and limitations."[50] The ALJ also found Mr. Allred's opinions inconsistent with treatment notes and unsupported by the statements of others. The ALJ's conclusion is supported by substantial evidence.

Mr. Allred opined that Plaintiff experienced moderate impairment in every area of mental functioning.[51] In Mr. Allred's treatment records, however, he did not note any abnormal mental status for the six months he attended to Plaintiff.[52] Indeed, most of Mr. Allred's notes address Plaintiff's problems with family, dating, finding a job, and overcoming his disabilities.[53] Mr. Allred also noted that Plaintiff was showing "good progress" was "elated" and "excited" at the prospect of teaching at a school, and that he continued to look for a job.[54] Plaintiff makes no argument about why the ALJ's conclusion is erroneous. In sum, Mr. Allred's treatment records contradict and do not support Mr. Allred's opinion, and thus the ALJ could properly conclude that Mr. Allred's opinion should be given little weight.[55]

---

[50] R. at 24.

[51] *See id.* at 1050–51.

[52] *See id.* at 914–46.

[53] *See id.* at 914 (discussing what Plaintiff will do for work after his current job ends); 915 (discussing problems with dating); *id.* at 926 (discussing Plaintiff returning to school to obtain new marketable skills); *id.* at 936 (discussing Plaintiff living with parents and looking for a job).

[54] *See id.* at 924, 926, 934, and 946.

[55] *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (concluding that the ALJ properly discounted a treating physician's opinion because it contradicted the physician's own office records).

D. Allegedly Discounted the Testimony of Plaintiff's Brother

Plaintiff's brother did not testify before the ALJ, but he did submit a written statement. As a nonmedical source, the ALJ was required to explain the weight given to this opinion and "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."[56]

Plaintiff contends that the ALJ erred in assessing his brother's statement because he did not indicate how the brother's statement "affected his determination of [Plaintiff's] residual functional capacity."[57] In Plaintiff's view, the ALJ's analysis is conclusory, "boilerplate language" that insufficiently analyzes how the testimony differs from the medical record. With respect to the brother's testimony, the ALJ assigned it "only partial weight" because although it was not "inconsistent with the record" it did not "describe any specific work-related limitations other than the claimant's inability to drive."[58]

The ALJ's analysis is sufficient for analyzing a nonmedical source's opinion testimony. Contrary to Plaintiff's argument—that the ALJ did not specifically address how the brother's testimony differed from the medical record—the ALJ expressly noted that the brother's testimony was congruent with the record. The ALJ was entitled to give the brother's statement only partial weight because it did not contain specifics that would materially assist the ALJ in determining Plaintiff's RFC. For these reasons the ALJ committed no error here.

---

[56] *Keyes-Zachary*, 695 F.3d at 1163 (quoting SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)).

[57] *See* Docket No. 19, at 12.

[58] *See* R. at 24.

E. Allegedly Improperly Assessed Plaintiff's RFC

Plaintiff argues that "[i]f a proper hypothetical had been addressed to the vocational expert, [Plaintiff] would have been deemed disabled based upon the ALJ's own findings."[59] To support this argument, Plaintiff quotes the ALJ's RFC findings and then inserts a two-page block quote from a vocational expert that allegedly undermines the ALJ's findings.[60] The vocational expert that Plaintiff quotes, however, only submitted an opinion to the Appeals Council, but did not opine to the ALJ. Plaintiff provides no law, analysis, or argument for why the vocational expert's opinion renders the ALJ's RFC finding erroneous. The Court concludes that this issue is inadequately briefed and Plaintiff thereby waives this issue.[61]

Nevertheless, even if the Court considers the opinion Plaintiff's vocational expert provided for the Appeals Council, Plaintiff's argument fails. An Appeals Council will review additional evidence if it "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."[62] Here, the Appeals Council determined that the opinion of Plaintiff's vocational expert would not change the outcome of the ALJ's decision.[63] In reviewing this decision, the Court must determine whether this new evidence renders the ALJ's decision unsupported by substantial evidence.[64] This requires the Court to "speculate to some extent on

---

[59] Docket No. 19, at 13.

[60] *See id.* at 14–15.

[61] *See Keyes-Zachary*, 695 F.3d at 1161 (concluding that plaintiff waived arguments that were inadequately briefed and poorly developed); *Eateries, Inc. v. J.R. Simplot. Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) (declining to craft a party's argument that was inadequately briefed).

[62] 20 C.F.R. § 404.970(a)(5).

[63] *See* R. at 1–2.

[64] *See Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017).

how the administrative law judge would have weighed the newly submitted [evidence] if [it] had been available for the original hearing."[65]

Plaintiff's vocational expert opined that Plaintiff could not maintain employment as an office helper or mail clerk because Plaintiff's limitations prohibit him from working closely with others and he would become irritable.[66] Further, the vocational expert opined that Plaintiff cannot work as an office helper because that would require him to work at a fast pace, to multi-task, and to work in close proximity with coworkers, supervisors, and the public.[67] The vocational expert further stated that Plaintiff cannot work as a mail clerk because it would require him to work at a production pace using both hands, frequently reaching, and prohibit him from taking unscheduled breaks.[68]

Plaintiff's argument confuses the roles of the ALJ and the vocational expert. The ALJ, not the vocational expert, determines the restrictions a claimant in fact had, and how those restrictions affect the claimant's RFC.[69] From there, the ALJ determines whether the vocational expert had identified a significant number of jobs in a relevant market given the restrictions.[70] On the other hand, a vocational expert "translates factual scenarios into realistic job market probabilities."[71]

---

[65] *Vallejo v. Comm'r, SSA*, 762 F. App'x 532, 535 (10th Cir. 2019) (quoting *Riley v. Shalala*, 18 F3d 619, 622 (8th Cir. 1994)).

[66] *See* Docket No. 26, at 10.

[67] *Id.*

[68] *Id.*

[69] *See* 20 C.F.R. § 404.1546(c); *accord e.g.*, *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987); *Kessans v. Comm'r of Social Security*, 768 F. App'x 531, 535 (6th Cir. 2019).

[70] *See Rutledge*, 230 F.3d at 1175.

[71] *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982).

Here, the opinion of Plaintiff's vocational expert seeks to expound the medical impairments and RFC the ALJ found rather than identifying or eliminating available jobs based on the ALJ's findings. For example, the ALJ concluded that Plaintiff can occasionally interact with the public, but Plaintiff's vocational expert opined that Plaintiff could not work in close proximity with coworkers, supervisors, and the public. This greatly expounds upon the ALJ's findings. Plaintiff's vocational expert does not operate within the confines of the ALJ's findings, but seeks to undermine the ALJ's medical impairment findings and RFC conclusion. This goes beyond the vocational expert's role, and thus Plaintiff's new evidence would not change the ALJ's decision.

F. Allegedly Failed to Incorporate Findings in RFC

At step three of the five-step sequential process, the ALJ is to "assess the nature and extent of [the claimant's] physical limitations . . . " and determine the severity of any mental impairments.[72] Here, the ALJ found that Plaintiff had moderate limitations in: (1) interacting with other workers; (2) interacting with supervisors; (3) concentrating on what he was doing; and (4) being able to adapt and manage himself.[73] As correctly noted by the ALJ, these findings are not an assessment of Plaintiff's RFC.[74]

---

[72] 20 C.F.R. § 404.1545(b), (c).

[73] *See* R. at 18–19.

[74] *See Bales v. Colvin*, 576 F. App'x 792, 797–98 (10th Cir. 2014) (unpublished).

At step four, the ALJ is to make a detailed assessment by itemizing various functions contained in the broad limitation categories found in step three.[75] The ALJ is not required to include any limitations in the "paragraph B" criteria when determining a claimant's RFC.[76]

Here, the ALJ's analysis closely tracks the sequential process and principles set forth. At step three, the ALJ assessed Plaintiff's moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing himself. The ALJ specifically noted that "the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but [were] used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."[77] From there, the ALJ moved to step four and set forth a detailed assessment of Plaintiff's RFC. The ALJ had no obligation to include his step three findings in his RFC conclusion, but did account for those limitations by limiting Plaintiff to "simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple work-related decisions and few workplace changes, and only occasional interaction with the public."[78]

Further, the RFC appropriately incorporates—although the ALJ had no duty to do so— the ALJ's step three limitations because the ALJ found that Plaintiff was only moderately limited in interacting with others and could interact appropriately with others on a limited basis. The RFC finding acknowledges this and limits any potential interaction to just coworkers and

---

[75] *Id.* at 798; *see also* SSR 96-8p, 1996 WL 374184, at *4 ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945.").

[76] *See Bales*, 576 F. App'x at 797–98; *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013).

[77] *See* R. at 19.

[78] *Id.* at 19–20.

supervisors. Plaintiffs argument—that the ALJ erred by not finding that Plaintiff could not interact with other workers and supervisors—exceeds the moderate limitations found at step three. For these reasons, the ALJ did not err in this regard.

## IV. CONCLUSION

For the foregoing reasons and after a thorough a review of the entire record, the Court hereby AFFIRMS the decision below.

DATED March 26, 2020

BY THE COURT:

Ted Stewart
United States District Judge